Estate of Samuel E. Montgomery, Samuel C. Montgomery v. Commissioner. Estate of Mercia C. Montgomery, Samuel C. Montgomery v. Commissioner.
Estate of Samuel E. Montgomery v. Commissioner
Docket Nos. 27539, 36206.
United States Tax Court
1953 Tax Ct. Memo LEXIS 34; 12 T.C.M. (CCH) 1380; T.C.M. (RIA) 53389; December 7, 1953
*34 Estate tax. - Fair market value of shares of stock in closely held corporation determined. Warren F. Wattles, Esq., 1200 Greenleaf Building, Jacksonville, Fla., and Donald K. Carroll, Esq., for the petitioners. F. L. Van Haaften, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined deficiencies in estate tax of the petitioners as follows: Docket No.
Date of Death
Deficiency
27539
November 13, 1945
$10,976.74
36206
July 18, 1947
47,759.58
The only question for decision is the value of shares of common stock of the Montgomery-Roberts Company, 29 of which were owned by Samuel E. Montgomery at the date of his death on November 13, 1945, and 148 of which were owned by Mercia C. Montgomery at the date of her death on July 18, 1947. Other issues, by agreement of the parties, are left for disposition under Rule 50. Findings of Fact Part of the facts have been stipulated. The stipulated facts are so found and the stipulation included herein by reference. Samuel E. Montgomery died, intestate, November 13, 1945, leaving as his heirs at law, his wife Mercia C. Montgomery, *35 his daughter Mercia M. Doss, and his son Samuel C. Montgomery. His wife died, intestate, July 18, 1947. Each spouse was a resident of Apalachicola, Florida at the time of death. Samuel C. Montgomery is the duly appointed administrator of each estate. The estate tax returns were filed with the collector of internal revenue for the district of Florida. In May 1914, a partnership consisting of Samuel E. Montgomery, R. G. Roberts, and H. L. Oliver, started a small department or dry goods store under the name of Montgomery-Roberts Company in rented quarters in Bradenton, Florida. In January 1918 the partnership moved its store to other rented quarters in Bradenton and on April 1, 1925, bought the building in which these quarters were situated for $350,000. In February 1932 the assets of the partnership were transferred to the Montgomery-Roberts Company, a Florida corporation, (hereafter called the Company), in exchange for 300 shares of no-par common stock. These shares constitute the only outstanding issue of the Company's stock. Prior to 1942 the only officer of the Company who received a salary was R. G. Roberts. His salary amounted to $4,200 per year from 1932 through 1941. *36 Thereafter, the following salaries were paid: Year 1942
Salary
Bonus
R. G. Roberts
$5,450.00
H. L. Oliver
1,250.00
S. E. Montgomery
2,500.00
Year 1943
R. G. Roberts
$5,450.00
S. E. Montgomery
2,500.00
Year 1944
R. G. Roberts
$5,450.00
S. E. Montgomery
2,500.00
Year 1945
R. G. Roberts
$5,450.00
S. E. Montgomery
2,083.30
Mercia C. Montgomery
416.66
Year 1946
R. G. Roberts
6,000.00
Mercia C. Montgomery
2,500.00
S. C. Montgomery
5,000.00
Year 1947
R. G. Roberts
6,000.00
$9,000.00
S. C. Montgomery
6,000.00
9,000.00
Mercia C. Montgomery
1,250.00
The net profit or (loss) of the Company for the years 1932 to 1947, inclusive, was as follows: 1932
($1,509.54)
1933
( 1,305.78)
1934
728.87
1935
475.66
1936
1,213.72
1937
4,658.88
1938
8,509.21
1939
2,410.30
1940
$11,200.25
1941
12,863.97
1942
17,508.36
1943
30,439.27
1944
30,655.43
1945
34,052.88
1946
51,251.40
1947
41,513.55
In October 1936 the Company also established a store in a rented building in Sarasota, Florida which is about 8 miles south of Bradenton. Samuel C. Montgomery was made manager of this store on its opening and continued *37 in that capacity until he went into the Army in August 1942. Beginning in 1939 the preparedness and war years brought Government installations and personnel to the Sarasota-Bradenton area. An airplane base was built between the two cities at which approximately 5,000 men were stationed. Radar stations were installed. A trailer manufacturing plant began to make trailers for the Government about 10 blocks from the Bradenton store. There also was an air base at Venice, Florida, about 20 miles from Sarasota. The Company profits increased because of war conditions. On or about February 10, 1943, Mercia purchased 20 shares of stock in the Company from the estate of H. L. Oliver, the Company vice president who died in 1942. By this purchase Samuel E. and Mercia became the majority stockholders. Samuel E. was president of the Company. He was an outstanding businessman in the mercantile field, was the leader in the Company, and was consulted on all important matters affecting the business. He spent considerable time on the Company's affairs and was the financial head of the business. He died in 1945 just at the time the question of the renewal of the Company's lease on its Sarasota store, *38 which would expire in the summer of 1946, was entering the discussion stage. The idea of the Company officers was to seek a renewal. Samuel C. Montgomery, the son, returned to his job as manager of the Sarasota store in November 1945, 3 or 4 days after the death of his father. At that time business in the Sarasota store was unsettled. Inventories were depleted and merchandise hard to get. The location of the Sarasota store was a desirable one. It was close to the stores of Kress, J. C. Penney, and McCrory, which, while competing on some articles, were not in full competition and acted as "[pullers] of traffic". In December of 1945 it became apparent the lease for the Sarasota store would not be renewed and a search for new quarters was started. There was some thought of going out of business in Sarasota. Finally, the Company, in 1946, bought a building somewhat off the main street previously occupied by Fanney Motor Company. This location was not in the main business section of the city. Extensive remodeling was necessary to fit the building for a department store. The building and land, after the purchase of a few additional feet of land, cost $75,729. Of this, $60,000 was allocable *39 to the building. It cost about $103,000 to remodel. The new premises were larger than the old and the investment in the new store was larger. The old Sarasota store was vacated on July 31, 1947, and the new establishment was opened on September 22, 1947. Following the death of her husband, Mercia was made president of the Company. She had considerable ability as a businesswoman but did not match her husband in that respect. Prior to Mercia's death, her son Samuel C. became president. The Bradenton store had been built partly in 1917 and partly in 1922. By the time of Samuel E.'s death in 1945 it was badly in need of repairs and it was becoming evident that structural changes might be necessary. The Company had wanted to rebuild this store in 1945, but lacked the money. The building was reconstructed between the fall of 1949 and the spring of 1950 at a cost in excess of $250,000, financed through a loan from an insurance company. The Company paid no dividends until 1945. It then paid dividends as follows: Total Dividends
Dividend
(on 300
Year
Per Share
issued shares)
1945
$15.00
$4,500.00
1946
15.00
4,500.00
1947
15.00
4,500.00
The book *40 values of the assets of the Company at the close of each calendar year from the time of its organization through December 31, 1947, were as follows: Year
Per Share
1932
$ 97,970.86
$ 326.57
1933
96,145.48
320.48
1934
96,874.35
322.91
1935
97,234.54
324.12
1936
98,448.26
328.16
1937
103,107.14
343.69
1938
111,616.35
372.05
1939
113,406.20
378.02
1940
129,439.35
431.46
1941
141,201.32
470.67
1942
171,937.85
573.12
1943
201,806.32
672.69
1944
232,001.95
773.34
1945
266,354.08
887.85
1946
312,732.48
1,042.44
1947
347,217.44
1,157.39
When Samuel E. died in the fall of 1945 there was some uncertainty over what the business picture would be. In July 1947, when Mercia died, the Company was in the process of making its move from the old Sarasota store to the new location. Practically all of the merchandise inventory had been sold. There was the natural apprehension among Company officers that accompanies a change in location from a tried merchandising site to one that is new and untried. H. L. Oliver owned 99 shares of Company stock. In 1943 and 1944 his executor sold stock as follows: Number
of shares
Date
Purchaser
Price per share
20
February 10, 1943
Mercia C. Montgomery
Not shown by record.
10
August 5, 1943
R. M. Turner $325
10
August 5, 1943
R. G. Roberts $325
15
September 25, 1944
R. G. Roberts $300
19
September 25, 1944
Samuel E. Montgomery
Not definitely established
74 shares
*41 Just prior to the above purchase by Mercia, the stock was held as follows: Shares
Samuel E. and Mercia Montgomery
138
H. L. Oliver
99
R. G. Roberts
63
300
When Turner and Roberts made their purchases of stock from Oliver's executor as detailed above, the price they paid was what the seller asked. The year by year sales of the Company for 1932 through 1947 are as follows: Sales
Year
(Rounded to nearest $100.)
1932
$126,900.00
1933
104,600.00
1934
128,000.00
1935
129,700.00
1936
170,400.00
1937
223,600.00
1938
226,400.00
1939
232,600.00
1940
281,400.00
1941
287,200.00
1942
300,500.00
1943
412,000.00
1944
453,500.00
1945
455,000.00
1946
543,600.00
1947
662,300.00
The book value of the net liquid assets of the Company on December 31, 1945, and December 31, 1947, was $600.37 and $402.73 per share, respectively. The net profits per share of the Company for the taxable years 1943 to 1947 were as follows: Net Profit
Year
Per Share
1943
$101.46
1944
102.18
1945
113.51
1946
170.84
1947
138.38
The fair market value of the stock of the Company owned by Samuel E. Montgomery at *42 the date of his death was $550 per share. The fair market value of the stock of the Company owned by Mercia C. Montgomery at the date of her death was $625 per share. Opinion We are dealing with a question of fact, the valuation of shares of stock in a closely held corporation engaged in the department store business. For estate tax purposes the 29 shares owned by Samuel E. were returned at a value of $300 per share as of November 13, 1945, and the 148 shares owned by Mercia were returned at a value of $325 per share as of July 18, 1947. The respondent determined that Samuel E.'s stock had a fair market value of $888 per share and Mercia's stock, a fair market value of $1,157 per share. Each case involving questions of this kind must stand on its own facts. We have carefully considered all of the evidence in the record and given attention to the arguments of the parties made in their briefs. Among the factors taken into consideration are the history of the Company's earnings, the book value of the stock, the fact that the stock is closely held, the price at which other sales of the stock were made, the dividend record of the Company, the troubles with the lease of the Sarasota *43 store, the imminence of extensive repairs at the Bradenton store, the character of the Company management, and the opinions of the expert witnesses. It is apparent from the record that the respondent's determination was based primarily on the book value of the stock at the end of the years in which Samuel E. and Mercia died. Book value is but one of the factors to be considered and is not necessarily determinative of the question. On the other hand, we feel that the valuations used in the estate tax returns were far too low and that they were colored by an unduly pessimistic and apprehensive outlook by the decedents' son as to the future of the business. In our best judgment, the values which we have found in our findings of fact, i.e., $550 per share for the stock owned by Samuel E. and $625 per share for the stock owned by Mercia, represent the fair market value of the Company stock on the critical dates. Decision will be entered under Rule 50.